IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14-cr-20235-SHL-dkv |
| | ) |
| DARRELL RANDOLPH, | ) |
| a/k/a Big C, | ) |
| a/k/a Big Church, | ) |
| a/k/a Big Churp, | ) |
| a/k/a Big, | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS**

Before the Court is the Report and Recommendation of Magistrate Judge Diane K. Vescovo, filed May 5, 2015 (ECF No. 39), recommending that the Court deny Defendant Darrell Randolph's Motion to Suppress Evidence, filed January 30, 2015 (ECF No. 19). Randolph filed no objections to the Report and Recommendation. If a party fails to file objections within 14 days of the issuance of the Report and Recommendation, he has waived his right to review. Fed. R. Crim. P. 59(b)(2). Nevertheless, the District Court retains the authority to review a Report and Recommendation at its discretion. See Thomas v. Arn, 474 U.S. 140, 154 (1985). After reviewing the record in this case, the Court hereby ADOPTS the Magistrate Judge's Report and Recommendation and DENIES Defendant's Motion to Suppress.

## I. BACKGROUND

The following recitation of facts is based on testimony given at an evidentiary hearing held on March 16 and April 3, 2015, before Magistrate Judge Diane Vescovo. (See Nos. 34, 37.)

The events giving rise to this case began on February 12, 2014, when Tyaira Onry, Randolph's 15 year old step-daughter, ran away from home. On February 17, a friend of Tyaira's contacted Tyaira's mother, Monique Polk, and informed her that Tyaira asked him to pick her up or bring her something to eat. At Polk's request, the friend arranged to have Tyaira meet him at a nearby Walmart. Randolph waited at the Walmart for Tyaira, and when she showed up for the meeting, Randolph confronted her and forced her to come home to their house on Coral Creek Lane (the "Coral Creek Residence"). While they were driving home, Randolph instructed Polk to call the police, which she did. Monique Polk testified that she spoke to Tyaira for fifteen to twenty minutes after they arrived back home while Randolph talked to the police in another room. At first, Tyaira was nonresponsive, but when Polk told Tyaira she would be sent to juvenile court, Tyaira told Polk that Randolph had been touching her inappropriately.

At the hearing on this motion, Polk testified that she never believed Tyaira's allegations, but that she conveyed them to the police who were talking with Randolph. After Polk told the police about Tyaira's allegations, she asked Tyaira whether Randolph was circumcised. When Tyaira allegedly said that he was, Polk immediately told the officers on the scene that Tyaira was lying. One of the officers on the scene, Officer Blake, told a different version of these events. According to Blake, Polk was shocked when she informed him of Tyaira's allegations and appeared to believe her daughter at first. Blake also testified that Tyaira was crying, visibly upset, and did not appear to be lying.

After Officer Blake learned of Tyaira's allegations, he reported the incident to the Department of Children's Services ("DCS") because Tyaira was a minor. DCS sent investigator Sabrina Wallace to the scene. Wallace interviewed Polk and Tyaira separately. Polk told Wallace that Tyaira had prior discipline issues, a propensity for lying and had previously made similar allegations about an uncle that she later recanted. Wallace testified at the hearing that she interviewed Tyaira for an extended period of time and that Tyaira was emotional and reluctant to make eye contact during the interview. Tyaira told Wallace that Randolph last molested her in December 2013. When Wallace told Tyaira what Polk had said about her past, Tyaira began crying and did not respond. Tyaira told Wallace that her sister Morgan could corroborate her allegations, but Morgan did not do so. Wallace testified that Tyaira was consistent with her story, very emotional and that she had no reason to doubt her story. The Magistrate Judge found Wallace to be a very reliable witness.

Polk and Randolph both testified about Tyaira's propensity for lying and inappropriate sexual behavior. According to Polk, when Tyaira was in eighth grade, she posted on Facebook that she was pregnant and exchanged naked pictures with boys. When Polk confronted Tyaira and asked why sex was on her mind, Tyaira told her, while crying, that she was raped when she was at her grandmother's house. According to Polk, these allegations could not be corroborated. Polk also testified that Tyaira stole a cellphone from a classmate when she was thirteen and that Tyaira only admitted to the theft when she was caught by the police. According to Polk, Tyaira frequently disobeyed her by bringing boys to the house, and Polk had caught Tyaira lying to her friends that her mother and grandmother had died. Polk testified that she believes Tyaira is lying in this case to avoid punishment for running away. Randolph generally repeated Polk's claims about Tyaira's alleged unreliability during his testimony.

The Department of Children's Services conducted a forensic interview of Tyaira on February 27, 2014. Sergeant Hillman of the Memphis Police Department was present and observed the interview via a video feed. During the forensic interview, Tyaira alleged that Randolph had been molesting her since she was eleven years old, identified distinctive marks in Randolph's genital area, and stated that Randolph was uncircumcised. Sergeant Hillman testified that Tyaira had an honest demeanor during the interview.

On March 4, 2014, Sergeant Hillman interviewed Randolph. Randolph told Hillman that Tyaira was troubled and had made similar false accusations before but later recanted. Randolph also claimed to have an iPad with evidence that would prove Tyaira was lying, but he refused to turn it over until he talked to his lawyer. Randolph also refused to consent to a photograph of the distinctive mark in his genital area. Randolph claims that Hillman's first question during the interview was whether Randolph was a drug dealer. Hillman testified that she did not recall asking this but it could have happened because Tyaira may have mentioned in the forensic interview that Randolph sold drugs. Randolph believes that this alleged initial question is evidence that the investigation into Tyaira's allegations was merely a "front" for investigating his alleged activities as a drug dealer.

Hillman met with a special victims prosecutor to discuss the potential charges against Randolph. Based on the forensic interview, Hillman's interview with Randolph, and Randolph's refusal to consent to being photographed, the prosecutor decided to charge Randolph with the rape of a child. On March 5, Hillman signed an affidavit for Randolph's arrest warrant for the molestation charges. Later that day, Hillman also sought a search warrant to photograph Randolph's genital area. Hillman testified that she did not contact Polk or Tyaira's school to ascertain Tyaira's reliability prior to signing the affidavit, because, based on her experience, she

4

believed Tyaira was being truthful and that Randolph was lying. Hillman was aware that Tyaira was a runaway but did not view this as impacting her credibility because it is common for assault victims to act out and run away.

On March 6, the Fugitive Apprehension Team went to the Coral Creek residence to arrest Randolph. While there, the police discovered marijuana belonging to Polk.[1] When Randolph arrived at the Coral Creek Residence, he was arrested for the molestation of Tyaira. The police later obtained a search warrant for the Coral Creek Residence to search for other drugs, but the record is unclear if any were found.

Later that day, Tyaira and her grandmother (whom she began living with after she made the allegations against Randolph) came to Sergeant Hillman's office to seek help retrieving clothing from Tyaira's house. At that meeting, Tyaira told Hillman that she had kept notes about Randolph's assaults in composition notebooks and that these notebooks, along with a note addressed to Tyaira's sister that allegedly corroborated the assaults, were located at the family's other residence where the abuse allegedly began (the "Market Square Residence"). Based on this information, Sergeant Hillman and Detective Hawkins jointly prepared an affidavit requesting a document search warrant for the Market Square Residence.[2] Based on this affidavit, Shelby County Criminal Court Judge Coffey issued a search warrant for the Market Square Residence for written documents, including diaries, composition books, letters, and photographs of the interior of the home.

---

[1] There is conflicting testimony about whether the marijuana was in plain view, but this is irrelevant to the instant motion to suppress since Randolph is not trying to suppress any evidence obtained from the Coral Creek residence.

[2] Hawkins, who had no personal experience with Tyaira at this point, was the affiant in the affidavit. However, both Hawkins and Hillman testified that Hillman helped Hawkins prepare the affidavit.

The search of the Market Square Residence was conducted jointly by the General Investigation Bureau and the Narcotics Department.[3] The police did not find the notebooks Tyaira described.[4] The police did, however, discover a brown substance that was later identified through forensic tests as heroin. Based on the discovery of heroin, Detectives Vance and Jones applied for, and were granted, a second search warrant of the Market Square Residence to look for more drugs. During the second search, the police discovered cocaine, heroin, marijuana, and a firearm. Detective Vance obtained an arrest warrant for Randolph based on the discovery of these drugs and Randolph was subsequently arrested.

On April 23, 2014, a federal grand jury indicted Randolph on charges of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. (See Indictment, ECF No. 05, Case No. 13-cr-20068-SHL.) On September 16, 2014, Randolph was charged in a separate indictment with possession with the intent to distribute cocaine base, cocaine, heroin and marijuana, all in violation of 21 U.S.C. § 841(a)(1), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and possessing a weapon in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (See Indictment, ECF No. 1). Although this motion was filed in the case indicted on September 16, 2014, the two cases were consolidated on October 27, 2014, for purposes of scheduling and pre-trial motions. (See ECF No. 12.)

On January 30, 2015, Randolph filed the instant Motion to Suppress (ECF No. 19), which was referred to Magistrate Judge Vescovo on February 4, 2015. (ECF No. 21.) Following the

---

[3] Detective Vance, who was present at the search, testified that the Narcotics Department was involved because they have more experience breaching doors.

[4] The police did find a composition notebook, but it did not contain any evidence supporting Tyaira's allegations.

evidentiary hearing, Magistrate Judge Vescovo issued a Report and Recommendation, recommending denying Defendant's Motion to Suppress. (ECF No. 39.)

**II. ANALYSIS**

Randolph argues that the evidence of drugs discovered during the second Market Square Residence search should be excluded for two reasons. First, he claims the evidence is "fruit of a poisonous tree" because there was not probable cause for his first arrest warrant (for the molestation charges) and that the initial search warrant of the Market Square Residence was "bootstrapped" off of this allegedly illegal arrest. Second, Randolph claims the initial Market Square search warrant was defective because the officers seeking the warrant intentionally omitted background information regarding the informant in violation of Franks v. Delaware, 438 U.S. 154 (1979). The Magistrate Judge concluded that there was probable cause for the first arrest warrant and that Randolph was not entitled to a Franks hearing because he failed to make a substantial preliminary showing that the police intentionally or recklessly omitted information from the search warrants. The Court agrees.

**a. Probable Cause**

Randolph claims that there was not probable cause for Randolph's first arrest warrant based on the molestation charges and that the evidence obtained at the Market Square Residence should be excluded because the warrants used to search that property were based on information obtained through Randolph's arrest. The Magistrate Judge made the proposed findings of law that there was probable cause for the first arrest warrant and independent probable cause for both of the Market Square Residence search warrants. The Court agrees.

Probable cause for an arrest exists where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution,

7

in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (citations omitted). Important considerations in evaluating probable cause are the credibility, reliability, and veracity of the source of the information. See Illinois v. Gates, 462 U.S. 213, 230 (1983). Information derived from victims and eyewitnesses to crimes are "entitled to a presumption of reliability and veracity" even without independent corroboration, United States v. Ingram, 985 F.2d 562 (6th Cir. 1993), and an officer is entitled to rely on an eyewitness identification to establish probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." Rainer v. Lis, No. 92–2436, 1994 WL 33969, at *2 (6th Cir. 1994).

In this case, Tyaira claimed that she had been molested by Randolph and described details that could potentially corroborate her allegations. The Sixth Circuit has previously held that a victim's accusation that she had been sexually assaulted, standing alone, was sufficient to establish probable cause for an arrest absent evidence that the law enforcement officer seeking the warrant had reason to believe the eyewitness identification was in some way untruthful or unreliable. See Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir. 1999). As the Magistrate Judge correctly noted, there is nothing in the record that shows Sergeant Hillman had any reason to doubt Tyaira's allegations.

Randolph argues that Tyaira's history of alleged disobedience and lying (including an alleged prior false accusation of rape) undermine her claims. However, the testimony at the hearing does not support this conclusion. First, the record shows that the only official who was told about Tyaira's past problems in detail was social worker Wallace, and Hillman testified that

8

she was not aware of what Polk and Randolph told Wallace.  Second, while Randolph told Hillman that he had evidence that would undermine Tyaira's claims, he refused to disclose this evidence to the police at his interview.  Without the evidence alluded to, Randolph's general accusation that Tyaira was a liar, coming from an alleged perpetrator, is far from sufficient to undermine the otherwise credible testimony of a victim.  Finally, Hillman testified that the fact that Tyaira ran away did not undermine her claim because it is common for abuse victims to try to escape their situations, and that she had no reason to doubt Tyaira's veracity based on her interviews.  Therefore, Tyaira's claims created sufficient probable cause to support the first arrest warrant.

Furthermore, even if there was not probable cause for Randolph's initial arrest, the evidence found at the Market Square Residence would still be admissible because those search warrants were supported by independent probable cause.  The initial search warrant to look for documents was supported by Tyaira's credible allegations that there were journals at that residence that would support her allegations.  While the police never found these documents, there is nothing in the record to indicate that Hillman and Hawkins should have doubted Tyaira's claims.  The second search warrant for the Market Square Residence was supported by the discovery of heroin in the first search.  Randolph does not challenge the sufficiency of this evidence to support a second search warrant and, even if he did, there is nothing in the record that would support that claim.  Therefore, none of the evidence found at the Market Square Residence is excludable as fruit of the poisonous tree because there was sufficient probable cause for all of the warrants issued in this case.

### b. Entitlement to a Franks Hearing

Randolph also argues that he is entitled to a Franks hearing because he claims officers purposely omitted necessary information from the March 5 arrest warrant and the March 7 search warrant for the Coral Creek Residence. The Magistrate Judge made the proposed finding of law that Randolph is not entitled to a Franks hearing, and the Court agrees.

A determination regarding probable cause to issue a warrant can generally only be determined in light of the information brought to the issuing judge's attention. See Aguilar v. Texas, 378 U.S. 109, 109 (1968). However, a court may hold a hearing to consider evidence that was not before the issuing judge if a defendant can make a substantial preliminary showing that a false statement or material omission that was necessary to the finding of probable cause was knowingly or recklessly included (or omitted) by the affiant in the warrant affidavit. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Randolph's argument fails because he can neither show a material misrepresentation in the affidavits nor that the information that was omitted from the affidavit undermined the showing of probable cause.

Randolph argues that Tyaira's alleged history of lying, inappropriate sexual behavior, false accusations and running away should have been included in the affidavit for the arrest warrant. However, the record shows that Sergeant Hillman was only aware of the fact that Tyaira had run away and did not know the details of Randolph's accusations against Tyaira. Polk had explained Tyaira's alleged history of lying to Wallace, but Wallace testified that she did not share this information with the police and there is no indication that either Polk or Randolph made these allegations to Hawkins, Hillman, or any other police officer. Whether or not Tyaira was lying, this argument ultimately fails because Randolph cannot show that one of the affiants

engaged in deliberate or reckless disregard for the truth by omitting critical information from the affidavit.

The Magistrate Judge further held that, even assuming Hillman deliberately omitted the information about Tyaira running away and Randolph's allegations of Tyaira's past false accusations, Randolph is still not entitled to a Franks hearing because he cannot show that any of the alleged omissions would defeat the showing of probable cause. The Court agrees. As the Magistrate correctly noted, "[a] teenager's prior disciplinary record is hardly a reason to doubt the reliability of the information given to the affiants, especially given the consistency of her accusations and her identification of Randolph's distinct mark." (Report and Recommendations, ECF No. 39 at 39.) Further, the fact that Tyaira ran away from home could actually support her claims of sexual abuse because Sergeant Hillman and Detective Hawkins both testified that it is common for assault victims to act out and run away from home. Therefore, even if Detective Hawkins had included all of the information that Randolph believes undermines Tyaira's credibility, there still would have been probable cause to issue both the initial arrest warrant and the search warrant for the Market Square Residence.

## III. CONCLUSION

Having reviewed the Report and Recommendations, the Court ADOPTS the Magistrate Judge's factual findings and conclusions of law, and DENIES Defendant's Motion to Suppress.

**IT IS SO ORDERED,** this 12th day of June, 2015.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE